# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## RAY v SWAGER

Docket No. 152723. Argued on application for leave to appeal on October 19, 2016. Decided July 31, 2017.

Michael A. Ray and Jacqueline M. Ray, acting as coconservators for their minor child, Kersch Ray, filed an action in the Washtenaw Circuit Court against Eric Swager, Scott A. Platt, and others, in part alleging that Swager was liable for the injuries suffered by Kersch when Kersch was struck by an automobile driven by Platt. Kersch was thirteen years old and a member of the Chelsea High School cross-country team at the time of the accident; Swager was the coach of the team and a teacher at the high school. Kersch was struck by the car driven by Platt when Kersch was running across an intersection with his teammates and Swager during an early morning team practice. Plaintiffs alleged that Swager had instructed the runners to cross the road even though the "Do Not Walk" symbol was illuminated. Swager moved for summary disposition under MCR 2.116(C)(7), arguing that as a governmental employee he was entitled to immunity from liability under MCL 691.1407(2) of the governmental tort liability act (GTLA), MCL 691.1401 *et seq.* The circuit court, Carol A. Kuhnke, J., denied Swager's motion, concluding that whether Swager's actions were grossly negligent and whether he was the proximate cause of Kersch's injuries—and therefore not entitled to immunity under the GTLA— were questions of fact for the jury to decide. Plaintiffs appealed. In an unpublished per curiam opinion, issued October 15, 2015 (Docket No. 322766), the Court of Appeals, BOONSTRA, P.J., and SAAD and HOEKSTRA, JJ., reversed and remanded the case to the circuit court for entry of summary disposition in favor of Swager. The Court of Appeals reasoned that Swager was immune from liability under MCL 691.1407(2) because reasonable minds could not conclude that Swager was the proximate cause of Kersch's injuries; rather, Platt's presence in the roadway and Kersch's own actions were the immediate and direct causes of Kersch's injuries, and the most proximate cause of Kersch's injuries was being struck by a moving vehicle. Plaintiffs sought leave to appeal. The Supreme Court ordered and heard oral argument on whether to grant plaintiffs' application for leave to appeal or take other action. 499 Mich 988 (2016).

In an opinion by Justice VIVIANO, joined by Justices MCCORMACK, BERNSTEIN, and LARSEN, the Supreme Court, in lieu of granting leave to appeal, *held*:

The Court of Appeals failed to correctly analyze proximate cause. For purposes of MCL 691.1407(2), the phrase "the proximate cause" refers to legal causation, which is distinct and separate from factual causation. A proper proximate cause analysis under the GTLA does not

involve weighing but-for, i.e., factual, causes when assessing whether a defendant is *the* proximate cause of the plaintiff's injury. Instead, so long as the defendant's conduct is a factual cause of the plaintiff's injuries, the court must assess foreseeability and the legal responsibility of the relevant actors to determine whether the conduct of a government actor, or some other person, is the proximate cause of a plaintiff's injury—that is, the one most immediate, efficient, and direct cause of the plaintiff's injuries. The Court of Appeals failed to correctly analyze proximate cause because it only weighed factual causes. *Dean v Childs*, 474 Mich 914 (2016), is overruled, and to the extent *Beals v Michigan*, 497 Mich 363, 375 (2015), relied on the order in *Dean*, that portion of *Beals* is disavowed.

1. Under the GTLA, governmental agencies and their employees are generally immune from tort liability when they are engaged in the exercise or discharge of a governmental function. An exception to the broad grant of tort liability, MCL 691.1407(2) provides that a governmental employee is immune from tort liability caused by the employee during the course of his or her employment if (1) the employee is acting or reasonably believes he or she is acting within the scope of his or her authority, (2) the governmental agency is engaged in the exercise or discharge of a governmental function, and (3) the employee's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

2. In every negligence action, including one involving a government actor's gross negligence, the plaintiff must establish both factual causation and legal causation (also known as proximate cause); these concepts are separate and distinct. Although prior opinions have not always been clear, the legal term of art "proximate cause" is distinct from factual causation and the two terms must not be conflated. Proximate cause is a term with a well-established peculiar and appropriate meaning in the common law that involves examining the foreseeability of the consequences of an actor's conduct to determine whether a defendant should be held legally responsible for those consequences; factual causation, on the other hand, requires a plaintiff to establish that but-for the defendant's conduct, the plaintiff's injury would not have occurred. While this Court has used the term "proximate cause" both as a broader term referring to factual causation and legal causation together and as a narrower term referring only to legal causation, the broader characterization merely recognizes that a court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause of those injuries; in other words, proximate cause is not in issue if the plaintiff cannot establish factual causation.

3. A proper proximate cause analysis under the GTLA may not weigh but-for causes when assessing whether a defendant's conduct is *the* proximate cause of the plaintiff's injury. While a court must determine whether the defendant's conduct was a cause in fact of the plaintiff's injuries, a court must also assess proximate cause, that is, legal causation, which requires a determination of whether it was foreseeable that the defendant's conduct could result in harm to the plaintiff and whether the defendant's conduct was the one most immediate, efficient, and direct cause of the injury. The dissent's approach—which includes the weighing of factual causes in its proximate cause analysis—distorts the meaning of the phrase "the proximate cause" by severing it from the concept of legal causation, an approach not supported by caselaw or rules of statutory construction.

4. The Legislature's use of the phrase "the proximate cause" in MCL 691.1407(2) is consistent with the common-law understanding of that phrase at the time the GTLA was amended by 1986 PA 175. "Proximate cause" is a legal term of art with a well-established peculiar and appropriate meaning in the common law. For almost one hundred years, this Court has recognized that proximate cause involves the foreseeability of the consequences of the conduct of human actors. *Robinson v Detroit*, 462 Mich 439 (2000), and *Beals*, 497 Mich 363 are consistent with this understanding. Nothing in MCL 691.1407(2) evidences an intent by the Legislature to mandate a court to weigh the but-for causes of a plaintiff's injury when addressing the issue of proximate cause.

5. In *Dean v Childs*, 262 Mich App 51 (2004), the Court of Appeals held that the GTLA did not bar a claim against a firefighter who was alleged to have been grossly negligent when fighting a house fire that killed the plaintiff's children. The Supreme Court's subsequent order in *Dean*, 474 Mich 914—which reversed the judgment of the Court of Appeals and adopted the reasoning of the dissenting Court of Appeals judge—is overruled. The dissenting Court of Appeals judge erroneously weighed factual causes to conclude that the fire was the proximate cause of the deaths of the plaintiff's children. Moreover, only a human actor's breach of a duty can be a proximate cause; nonhuman and natural forces, like a fire, cannot be the proximate cause of a plaintiff's injuries for purposes of the GTLA. Rather, the nonhuman and natural forces affect the question of foreseeability in a proximate cause determination because such factors may constitute superseding causes that relieve the actor of liability if the intervening force was not reasonably foreseeable. To the extent that *Beals* relied on the Supreme Court's order in *Dean*, that portion of the *Beals* opinion is disavowed.

6. The dissent's approach, which would weigh but-for causes to determine the most immediate, efficient, and direct factual cause of the plaintiff's injuries, is unsupported by the language of the statute or the common-law understanding of proximate cause and would eliminate the narrow exception to governmental immunity created by MCL 691.1407(2)(c). Moreover, the approach would give no meaning to the 1986 amendment of the GTLA because it would immunize government actors for every harm that is a foreseeable result of their gross negligence.

7. In this case, it was undisputed that Swager acted within the scope of his authority as a governmental employee for the school and that he was engaged in the exercise or discharge of a governmental function at the time Kersch was injured. The Court of Appeals correctly addressed whether Kersch, Platt, and the vehicle itself were factual causes of Kersch's injuries because one's conduct cannot be the proximate cause without also being a factual cause. However, the panel's analysis was incomplete because its inquiry confused proximate cause with cause in fact; in other words, it failed to properly distinguish between factual causation and legal causation. The Court of Appeals erred by attempting to determine whether any of the other factual causes was a more direct cause of Kersch's injury than Swager's alleged gross negligence, without first determining whether any of the asserted but-for causes were proximate causes. It also failed to determine whether Platt was negligent, a prerequisite to determining whether he was a proximate cause of Kersch's injuries. The Court of Appeals similarly failed to correctly analyze whether Kersch, a child, was negligent and a proximate cause of his own injuries; the Court should have assessed his actions to determine whether he acted with the degree of care that would reasonably

be expected of a child of similar age, intelligence, capacity, and experience under the circumstance of the case. Finally, even if the Court of Appeals had determined that another actor was negligent and was *a* proximate cause of Kersch's injuries, it still would have needed to determine whether the defendant's conduct was *the* proximate cause. This would require considering the defendant's actions alongside any other proximate causes to determine whether the defendant's actions were, or could have been, the one most immediate, efficient, and direct cause of the injuries. On remand, summary disposition would be appropriate if reasonable minds could not differ on this question.

Court of Appeals opinion vacated and the case remanded to the Court of Appeals for further proceedings.

Justice WILDER, joined by Chief Justice MARKMAN and Justice ZAHRA, dissenting, disagreed with the majority's conclusions regarding the analysis to be used when determining whether, under MCL 691.1407(2)(c), a government actor's gross negligence was "the proximate cause" of a plaintiff's injury. In *Robinson*, 462 Mich 439, this Court interpreted the phrase "the proximate cause" consistently with the common law to mean the one most immediate, efficient, and direct cause of the plaintiff's injury, and that analysis necessarily entails the consideration of factual causation. To determine which cause—among more than one—was "most immediate, efficient, and direct," one must consider the panoply of but-for causes and weigh their immediacy, efficiency, and directness. From *Stoll v Laubengayer*, 174 Mich 701 (1913), and *Glinski v Szylling*, 358 Mich 182 (1959) (opinion by SMITH, J.), through more current decisions in *Robinson*, 462 Mich 439, and *Beals*, 497 Mich 363, this Court has consistently afforded the phrase "proximate cause," its common-law meaning—that is, one that treated the question of proximate cause as incorporating consideration of both factual (i.e., but-for) causation as well as legal causation.

"Legal cause" is a misnomer insomuch as it has nothing at all to do with causation; it instead involves examining the foreseeability of consequences and whether a defendant should be held legally responsible for such consequences. In other words, legal causation is a limitation to the scope of liability under the GTLA, not a means of assigning liability. This does not, however, render legal causation irrelevant. If after comparing the immediacy, efficiency, and directness of all potential but-for causes of an injury, a court determines that the most immediate, efficient, and direct cause was the governmental actor's gross negligence, the court should then assess whether the governmental actor's conduct was also a legal cause of the injury (i.e., whether the injury was a foreseeable consequence of the governmental actor's conduct). If not, the actor is immune under MCL 691.1407(2)(c).

The majority's interpretation largely divorced the meaning of the phrase "the proximate cause" from the concept of factual causation, in that the majority conflated but-for cause and legal cause, treating "legal cause" as if it had something to do with causation. The majority's interpretation of "the proximate cause" is also inconsistent with the meaning that "the proximate cause" had in this state's common law at the time MCL 691.1407(2)(c) was enacted. While the phrase "proximate cause" has been used synonymously with the term "legal cause," prior opinions of this Court—*Craig v Oakwood Hosp*, 471 Mich 67 (2004); *Skinner v Square D Co*, 445 Mich 153 (1994); *Moning v Alfono*, 400 Mich 425 (1977); *Glinski*, 358 Mich 182; *Stoll*, 174 Mich 701—demonstrate that before and after the Legislature's 1986 amendment of the GTLA, factual causation was an established element of the proximate cause analysis; indeed, they

establish that the sine qua non of proximate cause was cause in fact. In addition, contrary to the majority's unsupported assertion, intervening natural forces and inanimate objects can be the proximate cause of a plaintiff's injury under the common law.

The majority's expansive interpretation of MCL 691.1407(2)(c)—that courts may not weigh but-for causes but must instead focus mainly on the legal cause analysis—was inconsistent with this Court's duty to construe exceptions to governmental immunity narrowly. Any ambiguity in whether the Legislature intended the phrase "proximate cause" to refer to legal cause only or to refer to both factual cause and legal cause, had to be resolved in favor of using the more inclusive definition because doing so would lead to a narrower exception, and the Legislature's manifest intent to create an exception to governmental immunity did not obviate the Court's duty to construe that exception narrowly. Because the Legislature is presumed to have been aware that the exception set forth by MCL 691.1407(2) would be construed narrowly, had the Legislature wished to create a broad exception, it would have used language clearly demonstrating that intent.

The majority's failure to acknowledge that its holding is patently inconsistent with *Robinson* and *Beals*, and its resulting failure to perform a stare decisis analysis regarding *Robinson* and *Beals*, will undermine the rule of law, resulting in jurisprudential upset and uncertainty, with lower courts following either the *Robinson*/*Beals* analysis or the conflicting analysis announced in this case. The majority should have offered guidance on how to apply its holding—specifically, guidance regarding how to determine "the one most immediate, efficient, and direct cause" without weighing factual causes. The majority also should have explained how, in the wake of its decision, a plaintiff can carry the burden of pleading his or her claim in avoidance of MCL 691.1407(2). Lacking any practical guidance on how one determines proximate causation without weighing factual causes, it would seem nearly impossible for a plaintiff to satisfy that pleading requirement.

In this case, Swager was immune under MCL 691.1407(2), and thus entitled to summary disposition, because it was either Kersch's conduct or that of the driver—but not Swager's conduct—that was the one most immediate, efficient, and direct cause of Kersch's injuries. Accordingly, Justice WILDER would have affirmed on the basis that the Court of Appeals reached the correct outcome by duly following *Robinson* and *Beals*.

©2017 State of Michigan

# OPINION

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder

FILED July 31, 2017

S T A T E   O F   M I C H I G A N

SUPREME COURT

MICHAEL A. RAY and JACQUELINE M.
RAY as Coconservators for KERSCH RAY,
a Minor,

        Plaintiffs-Appellants,

v

ERIC SWAGER,

        Defendant-Appellee,

and

SCOTT ALLEN PLATT, HEATHER
MARIE PLATT, and LIBERTY MUTUAL
INSURANCE COMPANY,

        Defendants.

No. 152723

BEFORE THE ENTIRE BENCH

VIVIANO, J.

At issue is whether the conduct of defendant Eric Swager,[1] who is a government employee, was—for purposes of the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*—"the proximate cause" of the injuries suffered by plaintiff, Kersch Ray.[2] We hold that the Court of Appeals failed to correctly analyze proximate cause because it only weighed various factual causes of plaintiff's injuries to determine whether one of them was a more direct cause of plaintiff's injuries than defendant's conduct. Under the GTLA, a proper proximate cause analysis must assess foreseeability and the legal responsibility of the relevant actors to determine whether the conduct of a government actor, or some other person, was "the proximate cause," that is, as our caselaw has described it, "the one most immediate, efficient, and direct cause" of the plaintiff's injuries. Accordingly, in lieu of granting leave to appeal, we vacate the Court of Appeals' decision and remand to the Court of Appeals for further proceedings not inconsistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

In the fall of 2011, the then-thirteen-year-old plaintiff was a member of the Chelsea High School cross-country team. Defendant was the coach. Shortly after the season began, defendant held an early morning practice; it was plaintiff's first morning

---

[1] Defendants Scott A. Platt, Heather M. Platt, and Liberty Mutual Insurance Company are not involved in this appeal. For ease of reference, when we refer to "defendant" in this opinion, we are only referring to Eric Swager.

[2] Plaintiffs Michael A. Ray and Jacqueline M. Ray are Kersch Ray's parents and coconservators. For ease of reference, when referring to Kersch Ray alone, we use the term "plaintiff."

practice as a member of the team. The practice began at 5:59 a.m., when it was still dark outside. At the beginning of the practice, defendant took the team off school grounds to run on public roads. During the run, the team approached an intersection with a two-lane highway. The "Do Not Walk" symbol was illuminated because the traffic light was green for the highway traffic. Defendant and the group of runners he was with, which consisted of most of the team, stopped at the intersection. Defendant saw a vehicle in the distance, but he determined that it was far enough away to safely cross. He instructed the runners to cross the intersection by stating, "Let's go." It is unclear whether all the team members, including plaintiff, heard the instruction. Although most of the team safely crossed the road, a few runners in the back of the group were still in or near the roadway when the vehicle entered the intersection. The vehicle hit plaintiff and one of his teammates as they were crossing the road. Plaintiff was severely injured, and he has no memory of the accident.

In his deposition, the driver of the vehicle testified that he suddenly saw the runners crossing the intersection off to the right side of the road but that he did not see plaintiff in the intersection or have time to brake. The driver testified that he was not distracted and had been driving below the posted speed limit. While the driver initially admitted that he sped up when the traffic light turned yellow, he later stated that he did not recall whether he did anything in reference to the yellow light. The Washtenaw County Sheriff's officer who conducted an accident reconstruction concluded that the driver was not responsible for the accident.

3

Plaintiffs sued defendant and the driver.[3] Defendant moved for summary disposition under MCR 2.116(C)(7), asserting governmental immunity pursuant to the GTLA. Defendant also moved for summary disposition under MCR 2.116(C)(8) and (10). The trial court denied defendant's motion, stating that whether defendant's actions were grossly negligent and whether his actions were the proximate cause of plaintiff's injuries were questions of fact for the jury to decide.

Defendant appealed by right, and the Court of Appeals reversed in an unpublished per curiam opinion.[4] The panel concluded that any factual disputes were not material because reasonable minds could not conclude that defendant was the proximate cause of plaintiff's injuries.[5] The panel determined that the presence of the driver in the roadway and plaintiff's own actions were more immediate and direct causes of plaintiff's injuries and held that "the most proximate cause of [plaintiff's] injuries is the fact that he was struck by a moving vehicle."[6]

Plaintiff filed an application for leave to appeal in this Court, and we ordered oral argument on plaintiff's application, directing the parties to address

---

[3] Plaintiffs' suit against the driver, defendant Scott A. Platt, is not at issue here.

[4] *Ray v Swager*, unpublished per curiam opinion of the Court of Appeals, issued October 15, 2015 (Docket No. 322766), pp 3-4.

[5] *Id*. at 2-3.

[6] *Id*. at 3-4. Because the panel held that defendant was not the proximate cause of plaintiff's injuries, it did not address whether reasonable minds could conclude that defendant was grossly negligent. *Id*. at 4 n 4.

whether a reasonable jury could determine that the defendant's conduct was "the proximate cause" of plaintiff Kersch Ray's injuries where the defendant's actions placed the plaintiff in the dangerous situation that resulted in the plaintiff's injuries. MCL 691.1407(2)(c); *Robinson v City of Detroit*, 462 Mich 439, 462 (2000); *Beals v Michigan*, 497 Mich 363 (2015).[7]

## II. STANDARD OF REVIEW

The applicability of governmental immunity is a question of law that is reviewed de novo.[8] We also review de novo a trial court's decision regarding a motion for summary disposition.[9]

## III. BACKGROUND

Under the GTLA, governmental agencies and their employees are generally immune from tort liability when they are engaged in the exercise or discharge of a governmental function.[10] The act provides several exceptions to this general rule. One such exception is in MCL 691.1407(2), which provides in pertinent part:

> [E]ach . . . employee of a governmental agency . . . is immune from tort liability for an injury to a person or damage to property caused by the . . . employee . . . while in the course of employment . . . if all of the following are met:
>
> (a) The . . . employee . . . is acting or reasonably believes he or she is acting within the scope of his or her authority.

---

[7] *Ray v Swager*, 499 Mich 988 (2016).

[8] *Beals v Michigan*, 497 Mich 363, 369; 871 NW2d 5 (2015).

[9] *Id.*

[10] *Id.* at 370.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The . . . employee's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

Defendant, as a governmental employee, has the burden "to raise and prove his entitlement to immunity as an affirmative defense."[11] There is no dispute regarding whether defendant acted within the scope of his authority as a governmental employee for the school or whether he was engaged in the exercise or discharge of a governmental function. And the issue of whether defendant was grossly negligent is not presently before this Court. Accordingly, the only issue before us is whether there is a question of material fact regarding whether defendant was "the proximate cause" of plaintiff's injuries under MCL 691.1407(2)(c).

## IV. ANALYSIS

Proximate cause, also known as legal causation, is a legal term of art with a long pedigree in our caselaw.[12] Proximate cause is an essential element of a negligence claim.[13] It "involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences."[14] Proximate cause

---

[11] *Odom v Wayne Co*, 482 Mich 459, 479; 760 NW2d 217 (2008).

[12] A legal term of art must be construed and understood according to its peculiar and appropriate meaning. MCL 8.3a.

[13] *Moning v Alfono*, 400 Mich 425, 437; 254 NW2d 759 (1977) ("The elements of an action for negligence are (i) duty, (ii) general standard of care, (iii) specific standard of care, (iv) cause in fact, (v) legal or proximate cause, and (vi) damage.").

[14] *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994).

is distinct from cause in fact, also known as factual causation, which "requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred."[15] Courts must not conflate these two concepts.[16] We recognize that our own decisions have not always been perfectly clear on this topic given that we have used "proximate cause" both as a broader term referring to factual causation and legal causation together and as a narrower term referring only to legal causation.[17] All this broader characterization recognizes, however, is that "a court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the

---

[15] *Id.*

[16] See *Charles Reinhart Co v Winiemko*, 444 Mich 579, 586 n 13; 513 NW2d 773 (1994) ("The question of fact as to whether the defendant's conduct was a cause of the plaintiff's injury must be separated from the question as to whether the defendant should be legally responsible for the plaintiff's injury.") (quotation marks and citation omitted).

[17] See *Skinner*, 445 Mich at 162-163, citing *Moning*, 400 Mich at 437 ("We have previously explained that proving proximate cause actually entails proof of two separate elements: (1) cause in fact, and (2) legal cause, also known as 'proximate cause.' "). Professor Dan B. Dobbs describes the source of this confusion as follows:

> One major source of confusion about "proximate cause"—and thus another aspect of the pesky terminology problem—lies in the fact that many courts define the term in a way that gives it two distinct meanings. In one form or another, courts often say that the plaintiff, to prove proximate cause, must show (a) factual cause and (b) that the general type of harm was foreseeable. The effect of this definition is that two distinct legal issues can be called by the same name. [1 Dobbs, Hayden & Bublick, Torts, § 200, p 687.]

As we explain further below, our decision in *Beals* is an example of our Court's conflation of factual and legal causation. See *Beals*, 497 Mich at 374, 378.

7

defendant's negligence was the proximate or legal cause of those injuries."[18]   In a negligence action, a plaintiff must establish both factual causation, i.e., "the defendant's conduct in fact caused harm to the plaintiff," and legal causation, i.e., the harm caused to the plaintiff "was the general kind of harm the defendant negligently risked."[19]   If factual causation cannot be established, then proximate cause, that is, legal causation, is no longer a relevant issue.[20]

We take this opportunity to clarify the role that factual and legal causation play when analyzing whether a defendant's conduct was "the proximate cause" of a plaintiff's injuries under the GTLA.[21]   In any negligence case, including one involving a government actor's gross negligence, a court must determine whether "the defendant's negligence was a cause in fact of the plaintiff's injuries . . . ."[22]   But the court must also assess proximate cause, that is, legal causation, which requires a determination of

---

[18] *Craig v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004).  See also Prosser & Keeton, Torts (5th ed), § 42, pp 272-273 ("Once it is established that the defendant's conduct has in fact been one of the causes of the plaintiff's injury, there remains the question whether the defendant should remain legally responsible for the injury.").

[19] Dobbs, § 124, p 389.

[20] See *Skinner*, 445 Mich at 163.  Accordingly, we agree with the dissent that if an actor is not a factual cause of an injury, that actor cannot be considered a legal cause.  We are therefore puzzled by the dissent's claim that we divorce "proximate cause" from the concept of factual causation.

[21] We note that a plaintiff must also prove that a government actor's conduct was *grossly* negligent to hold such a defendant liable under the GTLA.  MCL 691.1407(2)(c).

[22] *Craig*, 471 Mich at 87.

whether it was foreseeable that the defendant's conduct could result in harm to the victim.[23] A proper legal causation inquiry considers whether an actor should be held legally responsible for his or her conduct, which requires determining whether the actor's breach of a duty to the plaintiff was a proximate cause of the plaintiff's injury.[24] It is not uncommon that more than one proximate cause contributes to an injury.[25] However, under the GTLA, we have held that when assessing whether a governmental employee was "the proximate cause" of the plaintiff's injuries, a court must determine whether the defendant's conduct was "the one most immediate, efficient, and direct cause of the injury . . . ."[26]

Contrary to the dissent's assertion, "the proximate cause" is not determined by weighing factual causes. Such an approach distorts the meaning of "the proximate cause"

---

[23] *Weymers v Khera*, 454 Mich 639, 648; 563 NW2d 647 (1997).

[24] See *Robinson v Detroit*, 462 Mich 439, 462; 613 NW2d 307 (2000) ("The one most immediate, efficient, and direct cause of the plaintiffs' injuries was the *reckless* conduct of the drivers of the fleeing vehicles.") (emphasis added). Because a proximate cause inquiry seeks "to determine the appropriate scope of a *negligent* defendant's liability," Dobbs, § 198, p 681 (emphasis added), it "is an issue that can only arise when the [actor] is negligent and his negligence can be identified as creating specified risks." *Id*. at § 210, p 731.

[25] *Brisboy v Fibreboard Corp*, 429 Mich 540, 547; 418 NW2d 650 (1988).

[26] *Robinson*, 462 Mich at 462. To the extent the dissent is concerned that this directive to consider the "one most immediate, efficient, and direct cause of the injury" provides lower courts with little guidance, we agree. But in the absence of briefing and argument on the issue, we decline to address how a court ought to decide, in a case in which there is more than one proximate cause, whether the defendant's conduct is "*the* proximate cause." For today, it is enough to clarify that only another *legal* cause can be more proximate than the defendant's conduct.

by severing it from the concept of legal causation. There is no basis in our caselaw or our rules of statutory construction for interpreting "the proximate cause" as having nothing to do with the legal term of art "proximate cause." The Legislature amended the GTLA in 1986 to include the phrase "the proximate cause," and so we must determine what the term "the proximate cause" would have meant to the Legislature then.[27] Before 1986, we can find no case that reads the term "proximate cause," even when preceded by a definite article, to mean "but-for cause."[28] Although some of our earlier decisions refer to factual

---

[27] See *Sam v Balardo*, 411 Mich 405, 425; 308 NW2d 142 (1981) ("[W]ords employed by the Legislature derive their meaning from the common-law usage at the time of the passage of the act . . . .").

[28] This is unsurprising, as the term "proximate cause" is applied by courts to those "considerations which limit liability even where the *fact of causation* is clearly established." Prosser & Keeton, § 42, p 273. Additionally, even our cases that confusingly treat "proximate cause" as meaning the *combination of* proximate cause and but-for cause seem to post-date the 1986 amendment of the GTLA. Our first characterization of "proximate cause" as meaning both "proximate cause" and "but-for cause" occurred in 1994. See *Skinner*, 445 Mich at 162-163.

We disagree with the dissent's suggestion that the Court in *Stoll v Laubengayer*, 174 Mich 701; 140 NW 532 (1913), treated "proximate cause" as a question of factual causation. In *Stoll*, we addressed whether the defendant's alleged negligence was the proximate cause of a child's fatal injuries sustained when her sleigh coasted under the defendant's horse-drawn wagon. *Id*. at 704-706. We considered the actions of the actors involved and concluded that "[b]ut for th[e] act of [the decedent] (subsequent to defendant's alleged negligent act, and therefore proximate to the injury) no accident could have occurred." *Id*. at 706. Accordingly, we concluded that the child's actions were a proximate cause of her injuries, so the defendant was not liable. *Id*. Nothing in *Stoll* purported to weigh but-for causes or suggested that the term "the proximate cause" somehow requires such an analysis. In fact, to do so would have been a marked departure from the then-applicable law of contributory negligence, which dictated that if the plaintiff's negligence "was in whole or in part a proximate cause" of the injury, there could be no recovery. *Krouse v Southern Mich R Co*, 215 Mich 139, 144; 183 NW 768 (1921). Under the contributory negligence doctrine, abolished in Michigan in 1979, see

10

causation in connection with proximate cause,[29] these cases merely reflect the unremarkable proposition that an actor cannot be a "proximate cause" without also being a "but-for cause."[30] They do not contradict the well-established understanding of proximate cause, which, as we have long recognized, involves the foreseeability of the consequences of the conduct of human actors, regardless of whether "a proximate cause" or "the proximate cause" is at issue. Almost one hundred years ago this Court stated the rule regarding proximate cause as follows:

> If a man does an act and he knows, or by the exercise of reasonable foresight should have known, that in the event of a subsequent occurrence, which is not unlikely to happen, injury may result from his act, and such subsequent occurrence does happen and injury does result, the act committed is negligent, and will be deemed to be *the proximate cause* of the injury.[31]

---

*Placek v Sterling Heights*, 405 Mich 638, 650; 275 NW2d 511 (1979), courts did not weigh but-for causes but instead considered whether the defendant's negligence was the sole proximate cause. See *Krouse*, 215 Mich at 145. See also Hayden, *Butterfield Rides Again: Plaintiff's Negligence as Superseding or Sole Proximate Cause in Systems of Purpose Comparative Responsibility*, 33 Loy LA L Rev 887, 901 (2000) ("[I]n the pre-comparative [negligence] era, the doctrine[] of sole proximate cause . . . functioned as convenient shorthand to explain an all-or-nothing result in a two-party situation.").

[29] See, e.g., *Moning*, 400 Mich at 440 n 13; *Glinski v Szylling*, 358 Mich 182; 99 NW2d 637 (1959) (opinion by SMITH, J.); *Stoll*, 174 Mich at 706.

[30] *Craig*, 471 Mich at 87.

[31] *Northern Oil Co v Vandervort*, 228 Mich 516, 518; 200 NW 145 (1924) (quotation marks omitted; emphasis added), quoting *Tozer v Mich Central R Co*, 195 Mich 662, 666; 162 NW 280 (1917), and *Jaworski v Detroit Edison Co*, 210 Mich 317; 178 NW 71 (1920).

11

This formulation, which is the "most general and pervasive approach" to proximate cause,[32] has been repeatedly reaffirmed by this Court.[33]  We see no reason why this

[32]  See Dobbs, § 198, pp 682-683 ("The most general and pervasive approach to . . . proximate cause holds that a negligent defendant is liable for all the general kinds of harms he foreseeably risked by his negligent conduct and to the class of persons he put at risk by that conduct.").

[33] See, e.g., *Moning*, 400 Mich at 439 (noting that whether a cause is a proximate cause depends in part on foreseeability); *Nielsen v Henry H Stevens, Inc*, 368 Mich 216, 220-221; 118 NW2d 397 (1962) ("To make negligence *the proximate cause* of an injury, the injury must be the natural and probable consequence of a negligent act or omission, which, under the circumstances, an ordinary prudent person ought reasonably to have foreseen might probably occur as the result of his negligent act.") (emphasis added); *Parks v Starks*, 342 Mich 443, 448; 70 NW2d 805 (1955) ("*The proximate cause* of an injury is not necessarily the immediate cause; not necessarily the cause nearest in time, distance, or space. . . .  In order that the plaintiff may recover it must appear that his injury was the natural and probable consequence of a negligent act or omission of the defendant which under the circumstances an ordinarily prudent person ought reasonably to have foreseen or anticipated might possibly occur as a result of such act or omission.") (emphasis added; quotation marks and citations omitted); *Nash v Mayne*, 340 Mich 502, 509; 65 NW2d 844 (1954) ("The confinement of plaintiff could not have been reasonably foreseen by defendant.  It follows that the [conduct] of defendant could not be and was not *the proximate cause* of plaintiff's injury.") (emphasis added); *Roberts v Lundy*, 301 Mich 726, 730; 4 NW2d 74 (1942) ("It is elementary that, before conduct can constitute actionable negligence . . . that conduct must be found to be *the proximate cause* of the injury. . . .  It cannot be said that a reasonable man should have foreseen or anticipated that the act [committed] . . . would result in the injury complained of here.") (emphasis added); *Weissert v Escanaba*, 298 Mich 443, 453; 299 NW 139 (1941) ("[T]he generally accepted test is that negligence is not *the proximate cause* of an accident unless, under all the circumstances, the accident might have been reasonably foreseen by a person of ordinary intelligence and prudence, and that it is not enough to prove that the accident is a natural consequence of the negligence, it must also have been the probable consequence.") (emphasis added); *Luck v Gregory*, 257 Mich 562, 569; 241 NW 862 (1932), citing *Stoll v Laubengayer*, 174 Mich 701; 140 NW 532 (1913) ("In order to constitute proximate cause, it must appear the injury to plaintiff was the natural and probable consequence of the negligence or wrongful act of the defendant, and that it ought to have been foreseen, in light of the attending circumstances.").

"peculiar and appropriate" legal meaning should not be ascribed to the Legislature's reference to proximate cause in the GTLA.[34] Accordingly, we presume that by "proximate cause" the Legislature meant proximate cause.

Most of our caselaw interpreting the GTLA is not to the contrary. In *Robinson*, we considered "whether the city of Detroit or individual police officers face[d] civil liability for injuries sustained by passengers in vehicles fleeing from the police when the fleeing car caused an accident."[35] We held that the government officials in question were

---

Moreover, other decisions of this Court in ordinary negligence cases have held that jury instructions using the phrase "the proximate cause" were erroneous because they were tantamount to an instruction that the plaintiff had to show that the defendant's negligence was the sole proximate cause before he could recover. See, e.g., *Kirby v Larson*, 400 Mich 585, 605; 256 NW2d 400 (1977) (opinion by WILLIAMS, J.); *Barringer v Arnold*, 358 Mich 594, 600; 101 NW2d 365 (1960); *Sedorchuk v Weeder*, 311 Mich 6, 10-11; 18 NW2d 397 (1945). See also *Dedes v Asch*, 446 Mich 99, 122; 521 NW2d 488 (1994) (RILEY, J., dissenting) ("Indeed, this Court has long interpreted the phrase 'the proximate cause' as one that is tantamount to an instruction that, before plaintiff could recover, he must show that defendant's negligence was 'the sole' proximate cause of the accident.") (quotation marks and citation omitted), majority opinion in *Dedes* overruled by *Robinson*, 446 Mich at 458-459. Nothing in these decisions suggests that use of the phrase "the proximate cause" was akin to an instruction that the jury had to weigh the various factual causes in the case.

[34] MCL 8.3a. See also *Hodge v State Farm Mut Auto Ins Co*, 499 Mich 211, 218; 884 NW2d 238 (2016) ("When the Legislature, without indicating an intent to abrogate the common law, 'borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.' "), quoting *Sekhar v United States*, 570 US ___, ___; 133 S Ct 2720, 2724; 186 L Ed 2d 794 (2013). The Legislature did not abrogate the common-law understanding of "the proximate cause" in the GTLA. See *Robinson*, 462 Mich at 462.

[35] *Robinson*, 462 Mich at 444.

13

immune from suit because a different proximate cause—"the *reckless conduct* of the drivers of the fleeing vehicles"—was the proximate cause of the plaintiff's injuries.[36] *Robinson* is therefore consistent with our holding today.

In *Beals*, we considered the defendant lifeguard's failure to intervene in the deceased's drowning.[37] While our analysis in that case was somewhat opaque, we believe *Beals* is best understood as holding that the lifeguard could not have been "the proximate cause" of the decedent's drowning because the plaintiff failed to show even a genuine issue of factual causation.[38] When a plaintiff attempts to establish factual causation circumstantially, that circumstantial proof must go beyond mere speculation.[39] The plaintiff in *Beals* failed to make this showing. We emphasized that any connection between the lifeguard's breach of a duty and the drowning was only speculative.[40] We also noted that "it [was] unclear that even a prudent lifeguard would have been able to observe and prevent the [deceased's] drowning," which further illustrated that the causal connection was "simply too tenuous."[41] In other words, the plaintiff failed to show that the lifeguard was a but-for cause of the deceased's death. Accordingly, we held that the

---

[36] *Id*. at 462 (emphasis added).

[37] *Beals*, 497 Mich at 365. The underlying reason for the drowning was unknown. *Id*. at 367.

[38] See *Skinner*, 445 Mich at 163 ("A plaintiff must adequately establish cause in fact in order for legal cause or 'proximate cause' to become a relevant issue.").

[39] *Id*. at 164.

[40] See *Beals*, 497 Mich at 374.

[41] *Id*. at 374 n 23.

defendant lifeguard was not "the proximate cause" of the deceased's death for the purposes of the GTLA.[42] The holding, if not all of the reasoning, of *Beals* is consistent with our understanding of the GTLA's use of "the proximate cause."[43]

We recognize that our caselaw is not without its blemishes. In *Dean v Childs*, the Court of Appeals held that the GTLA did not bar a claim against a firefighter who was alleged to be grossly negligent when fighting a house fire that killed the plaintiff's children.[44] We issued an order summarily reversing for the reasons stated by the Court of Appeals' dissent,[45] which had weighed the various factual causes of the children's deaths to conclude that the proximate cause "was the fire itself, not defendant's alleged gross negligence in fighting it."[46]

This analysis was erroneous. Determining proximate cause under the GTLA, or elsewhere, does not entail the weighing of factual causes but instead assesses the legal

---

[42] *Id*. at 378. Because factual causation could not be established, we agree with the dissent that it was unnecessary for *Beals* to analyze legal causation.

[43] We do not share the dissent's concern that this opinion will be a cause of confusion in the lower courts and are disheartened by the dissent's thinly veiled invitation to lower courts to ignore this opinion in favor of the dissent's preferred interpretation of *Beals*. This makes the dissent's claim of fealty to precedent ring hollow. Again, because *Beals* involved the absence of factual causation, a necessary predicate to a finding of proximate cause, it does not stand for the proposition that courts should determine whether a defendant was "the proximate cause" under the GTLA by weighing but-for causes.

[44] *Dean v Childs*, 262 Mich App 48, 51-52; 684 NW2d 894 (2004).

[45] *Dean v Childs*, 474 Mich 914 (2005).

[46] *Dean*, 262 Mich App at 61 (GRIFFIN, J., dissenting).

15

responsibility of the actors involved. Moreover, because proximate cause is concerned with the foreseeability of consequences, only a human actor's breach of a duty can be a proximate cause.[47] Consequently, nonhuman and natural forces, such as a fire, cannot be considered "the proximate cause" of a plaintiff's injuries for the purposes of the GTLA. Instead, these forces bear on the question of foreseeability, in that they may constitute superseding causes that relieve the actor of liability if the intervening force was not reasonably foreseeable.[48] The dissenting Court of Appeals opinion in *Dean* failed to recognize these principles and erroneously concluded that the fire was the proximate cause of the children's deaths. Our subsequent order adopting the dissent was therefore in error. Accordingly, we overrule our order in *Dean*.[49]

---

[47] See, e.g., Dobbs, § 198, pp 682-683 ("[A] negligent defendant is liable for all the general kinds of harm he foreseeably risked by his negligent conduct and to the class of persons he put at risk by that conduct."); Prosser & Keeton, § 42, p 264 (" 'Proximate cause' . . . is merely the limitation which the courts have placed upon the *actor's* responsibility for the consequences of the actor's conduct.") (emphasis added).

[48] See *McMillian v Vliet*, 422 Mich 570, 576; 374 NW2d 679 (1985).

[49] We do not do so lightly. "That a case was wrongly decided, by itself, does not necessarily mean that overruling it is appropriate." *Coldwater v Consumers Energy Co*, ___ Mich ___, ___; 895 NW2d 154 (2017); slip op at 10. Stare decisis principles dictate that we must also consider "whether the decision defies practical workability, whether reliance interests would work an undue hardship were the decision to be overruled, and whether changes in the law or facts no longer justify the decision." *Id*. at ___; slip op at 11.

Although *Dean* does not defy practical workability and there have been no intervening changes in law, the reliance interests are so minimal that further adherence to *Dean* is unwarranted. *Dean* is a peremptory order that has only been cited in two published decisions by Michigan courts. And there is no indication that our order "has caused a large number of persons to attempt to conform their conduct to a certain norm." *Paige v Sterling Heights*, 476 Mich 495, 511; 720 NW2d 219 (2006). Therefore, we

## V. APPLICATION

The Court of Appeals' proximate cause inquiry confused proximate cause with cause in fact. The panel focused on whether plaintiff, the driver of the vehicle, and the vehicle itself were *factual* causes of plaintiff's injuries.[50] This was a necessary inquiry because one's conduct cannot be the proximate cause without also being a factual cause. The panel's error was in its next step. Weighing these factual causes against defendant's actions, the Court of Appeals concluded that "there were obviously more immediate, efficient, and direct causes of [plaintiff's] injuries" than defendant's conduct.[51]

---

conclude that *Dean* has not "become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would produce not just readjustments, but practical real-world dislocations." *Robinson*, 462 Mich at 466. These considerations, coupled with our determination that *Dean* was wrongly decided, persuade us to overrule it.

Finally, we note that in *Beals* we stated that *Dean* was analogous because both cases addressed claims involving a government employee's failure to intervene to prevent a death. *Beals*, 497 Mich at 375. Our brief discussion of *Dean* in *Beals* was not necessary to our ultimate conclusion that the lifeguard was not "the proximate cause" because factual causation could not be established. Nonetheless, because we overrule *Dean*, we also disavow the portion of *Beals* relying on *Dean*. We otherwise uphold the result and as much of the analysis in *Beals* as is consistent with the principle that a government actor's conduct cannot be "the proximate cause" of one's injuries without being a factual cause thereof.

[50] *Ray*, unpub op at 4 ("Had [plaintiff] himself verified that it was safe to enter the roadway, . . . the accident would not have occurred. Likewise, had [the driver] not been driving on the roadway that morning, or had he otherwise avoided [plaintiff], the accident would not have occurred.").

[51] *Id.*

According to the panel, "clearly the most proximate cause of [plaintiff's] injuries is the fact that he was struck by a moving vehicle."[52]

The Court of Appeals' analysis failed to properly distinguish between factual causation and legal causation. The panel did not assess the legal responsibility of any of the actors involved, but instead attempted to discern whether any of the other factual causes was a more direct cause of plaintiff's injury than defendant's actions. This was error. Determining whether an actor's conduct was "the proximate cause" under the GTLA does not involve a weighing of factual causes. Instead, so long as the defendant is *a* factual cause of the plaintiff's injuries, then the court should address legal causation by assessing foreseeability and whether the defendant's conduct was *the* proximate cause.[53]

To the extent the Court of Appeals' opinion attempted to analyze this issue,[54] its analysis was incomplete. An appropriate proximate cause analysis should have considered the conduct and any legal responsibility therefor of defendant, plaintiff, and the driver of the vehicle that struck plaintiff. Further, before an actor can be a proximate cause, there must be the prerequisite determination that the actor was negligent—that is, that the actor breached a duty. In this case, the panel never determined whether the driver

---

[52] *Id*. at 3.

[53] *Robinson*, 462 Mich at 462.

[54] See *Ray*, unpub op at 4 n 3 ("[Plaintiff] had an obligation to assess the dangers of the road and to guard against those dangers. By failing to do so, [plaintiff] was among the causes of the accident and, because his own actions more directly preceded the accident, [defendant] cannot be *the* proximate cause of [plaintiff's] injuries.") (emphasis in original).

was negligent.  Without that determination, his actions could not be a proximate cause of plaintiff's injuries.[55]  Similarly, the panel failed to correctly analyze whether plaintiff was negligent and a proximate cause of his own injuries.  At the time of the accident, plaintiff was thirteen years old.  Unlike adults, who are held to the reasonable person standard, determining whether a child was negligent requires application of a subjective standard.[56]  The court must assess whether the child acted with the degree of care that would reasonably be expected of a child of similar age, intelligence, capacity, and experience under the circumstances of the case.[57]  The Court of Appeals erred by singularly focusing

---

[55] Because only a human actor's breach of a duty can be a proximate cause, we reject any suggestion that the vehicle alone could be the proximate cause of plaintiff's injuries.  See *Ray*, unpub op at 3 ("[T]he most proximate cause of [plaintiff's] injuries is the fact that he was struck by a moving vehicle.").

[56] Dobbs, § 134, p 421.  See also M Civ JI 10.06 ("A minor is not held to the same standard of conduct as an adult.").

[57] *Clemens v Sault Ste Marie*, 289 Mich 254, 257; 286 NW 232 (1939).  See also *Burhans v Witbeck*, 375 Mich 253, 255; 134 NW2d 225 (1965); *Ackerman v Advance Petroleum Transp, Inc*, 304 Mich 96, 106-107; 7 NW2d 235 (1942); Dobbs, § 134, p 421 ("The minor is . . . required to conduct himself only with the care of a minor of his own age, intelligence, and experience in similar circumstances . . . .").  The Court of Appeals failed to properly articulate this rule when it stated, "Children, even those considerably younger than [plaintiff], are expected to understand the danger attendant to crossing a street, and they are expected 'to use care and caution to guard against the dangers of such crossing.' " *Ray*, unpub op at 4 n 3 (citation omitted).  This analysis was incomplete because it failed to take into account any circumstances other than plaintiff's age that might bear on whether plaintiff's conduct was negligent.  The dissent repeats this error when it relies solely on plaintiff's age to conclude that plaintiff "could and should have verified that it was safe to enter the roadway before he voluntarily did so."

19

on plaintiff's age without also considering plaintiff's subjective characteristics and the relevant factual context.[58]

Finally, even if the panel had determined that another actor was negligent and was *a* proximate cause of plaintiff's injuries,[59] it still would have needed to determine whether defendant's actions were "*the* proximate cause." This would require considering defendant's actions alongside any other potential proximate causes to determine whether defendant's actions were, or could have been, "the one most immediate, efficient, and direct cause" of the injuries.[60] If, on the basis of the evidence presented, reasonable minds could not differ on this question, then the motion for summary disposition should be granted.[61] Because the Court of Appeals did not consider these issues in the first instance, we remand to that Court for reconsideration.[62]

---

[58] See *Thornton v Ionia Free Fair Ass'n*, 229 Mich 1, 9; 200 NW 958 (1924) ("[A]ge alone is not the conclusive test. Experience and capacity are also to be considered."); *Cooper v Lake Shore & Mich S R Co*, 66 Mich 261, 266; 33 NW 306 (1887) ("Every case [involving a child] must depend upon its own circumstances, and it would be unreasonable to apply [the rule of contributory negligence], under all circumstances, without regard to the condition of things at the time.").

[59] We emphasize that we do not decide whether a question of fact exists as to whether the driver, plaintiff, or both were negligent.

[60] *Robinson*, 462 Mich at 446.

[61] See *Jackson v Saginaw Co*, 458 Mich 141, 146; 580 NW2d 870 (1998). See also *Black v Shafer*, 499 Mich 950, 951 (2016) ("If reasonable minds could not differ regarding the proximate cause of a plaintiff's injury, courts should decide the issue as a matter of law.").

[62] Likewise, because the Court of Appeals did not address these issues, we decline to address whether defendant's actions were a but-for cause of plaintiff's injuries or whether defendant was grossly negligent. See *Ray*, unpub op at 2 n 1, 4 n 4. Nothing in our

20

## VI. RESPONSE TO THE DISSENT

Having read the dissent with care, we are simply perplexed. We *agree* with the dissent that one cannot be *the* or even *a* proximate cause without also being *a* cause in fact. Our opinion is very clear on this point. See, e.g., page 7 of this opinion ("All this broader characterization recognizes, however, is that a court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause of those injuries.") (quotation marks and citation omitted); page 8 of this opinion ("If factual causation cannot be established, then proximate cause, that is, legal causation, is no longer a relevant issue."); page 11 of this opinion ("[T]hese cases merely reflect the unremarkable proposition that an actor cannot be a 'proximate cause' without being a 'but-for cause.' "); page 17 of this opinion ("[O]ne's conduct cannot be the proximate cause without also being a factual cause."). We do not understand why the dissent repeatedly claims otherwise.

Neither can we follow the conclusion the dissent draws from our shared premise. We must remember that we are interpreting statutory language that the Legislature enacted in 1986. The question, therefore, is what the Legislature would have understood the phrase "the proximate cause" to mean in 1986. We believe that the answer to that question should draw on the decades of jurisprudence in this state, leading up to that date, defining "proximate cause." And, as our cases have uniformly held, one cannot be *a* or

---

opinion forecloses defendant from raising these arguments on remand.

21

*the* "proximate cause" without being both a factual cause *and* a legal cause of the plaintiff's injuries.

The dissent's approach, however, would render legal cause irrelevant. Under the dissent's theory, any factual cause—even an inanimate one—can be "the proximate cause" if it is the "most immediate, efficient and direct" factual cause of the plaintiff's injuries. The dissent claims that this has been "the common-law meaning" attributed to the phrase " 'the proximate cause' . . . in our jurisprudence since 1913." If that were true—if one's actions could, for now over one hundred years, have been "the proximate cause" without also being a legal cause—one would expect there to be volumes of cases from our Court standing for that proposition. But there is only one, our order in *Dean*, which we overrule today.[63] *Robinson* did not hold that one's actions could be "the proximate cause" without also being a *legal* cause; indeed, we held in *Robinson* that the drivers' *reckless* conduct was the proximate cause of the accident.[64] Neither did *Beals*;

---

[63] The dissent's reliance on *Robinson*, *Beals*, and *Dean* for this proposition is unavailing. And even if those cases fully supported the dissent, we would still find troubling its implicit view that three post-amendment cases tell us more about what the Legislature meant by its amendment of the GTLA than the decades of jurisprudence leading up to 1986. We reject any implication from the dissent that *Robinson* and *Beals* construed MCL 691.1407(2)(c) in a manner that deviated from the meaning of "proximate cause" at common law. If so, it would be those decisions, rather than our opinion, that "retroactively alter the meaning" of the phrase "the proximate cause" as used in MCL 691.1407(2)(c), because, as noted above, the Legislature has instructed us to define legal terms of art according to their "peculiar and appropriate meaning." MCL 8.3a. Further, we do not draw any conclusions from the fact that the Legislature has not amended the GTLA in light of the three post-amendment cases cited by the dissent. See, e.g., *Donajkowski v Alpena Power Co*, 460 Mich 243, 258; 596 NW2d 574 (1999) ("[L]egislative acquiescence is an exceedingly poor indicator of legislative intent.").

[64] *Robinson*, 462 Mich at 462.

22

but to extent that it relied on *Dean*, we disavow that portion of its reasoning.  Not even *Stoll*, the 1913 case the dissent trumpets as the progenitor of the (elusive) "proximate cause without legal cause" line of cases, held any such thing.[65]  And the cases the dissent cites to support its unique pitch do not do so; they stand only for a proposition with which we fully agree:  "Long before MCL 691.1407(2) was enacted in 1986—and many times since—our common-law has recognized that factual causation is . . . an integral part of 'proximate cause.' "  In fact, it is more than integral: factual causation is a condition precedent to proximate cause.  That is, one's conduct cannot be *a* or *the* "proximate cause" of a plaintiff's injury without also being a factual cause thereof.  But just because something is a factual cause of an injury does not mean it is *a* or *the* "proximate cause" thereof.  "Proximate cause" has for a century in Michigan, like every other American jurisdiction, required both a finding of factual *and* legal cause.  And that is undoubtedly what the Legislature would have understood when it used this legal term of art in the GTLA in 1986.

The dissent would jettison this understanding in favor of an approach that weighs factual causes to determine which among them is the "most immediate, efficient, and direct."  At the outset, we are not sure how this theory can be derived from MCL 691.1407(2)(c).  Why, one might wonder, would the Legislature choose language well-known in the law to denote one type of causation ("proximate cause") if it really meant another ("cause in fact")?  And we struggle to understand what the dissent's

---

[65] See footnote 28 of this opinion.

approach would entail. Consider this case. What if: the coach had chosen a different route; the driver had arrived one minute earlier or one minute later to the intersection; plaintiff had not gone to cross-country practice that day; plaintiff had not joined the cross-country team; his parents had not chosen to live in this school district; his mother had not given birth to plaintiff; his parents had never met, etc. All of these, and more, are but-for causes of the accident. The "causes of an event go back to the dawn of human events, and beyond."[66] How from those infinite causes a court, or anyone, could determine which is the most immediate, efficient, and direct but-for cause, we do not know. The dissent provides no guidance in this regard, instead finding it "easier to disparage the product of centuries of common law than to devise a plausible substitute . . . ."[67] All the dissent offers is the legally unrecognizable assertion that defendant's alleged gross negligence was not the one most immediate, efficient, and direct cause of plaintiff's injuries because the injuries would not have occurred but-for plaintiff's conduct and that of the driver. But a test that allows the mere existence of other but-for causes—which are by definition present in every case—to immunize government actors from liability for their grossly negligent conduct is really no test at all.

---

[66] Prosser & Keeton, § 41, p 264. Indeed, it was factual causation's infinitude that led "proximate cause" to develop, at least a hundred years ago, as the limitation that is "placed upon [an] actor's responsibility for the consequences of the actor's conduct." *Id*. Proximate cause serves to limit "liability at some point before the want of a nail leads to loss of the kingdom." *CSX Transp, Inc v McBride*, 564 US 685, 707; 131 S Ct 2630; 180 L Ed 2d 637 (2011) (Roberts, C.J., dissenting).

[67] *McBride*, 564 US at 707 (Roberts, C.J., dissenting).

Finally, in addition to being unsupported by the plain language of the statute or our caselaw, the dissent's interpretation fails to consider the statutory history of the GTLA.[68] We have cautioned that "courts must pay particular attention to statutory amendments, because a change in statutory language is presumed to reflect either a legislative change in the meaning of the statute itself or a desire to clarify the correct interpretation of the original statute."[69] Before 1986, the GTLA did not address whether government actors were immune from tort liability.[70] After our 1984 decision in *Ross v Consumers Power Co (On Rehearing)* afforded qualified immunity from all tort liability to government actors if they met certain conditions,[71] the Legislature amended the GTLA to create a narrow exception to this broad grant of immunity. The exception, which is at

---

[68] "[Q]uite separate from legislative history is *statutory* history—the statutes repealed or amended by the statute under consideration. These form part of the context of the statute, and (unlike legislative history) can properly be presumed to have been before all the members of the legislature when they voted. So a change in the language of a prior statute presumably connotes a change in meaning." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 256.

[69] *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009).

[70] *Odom*, 482 Mich at 467-468.

[71] *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 633-634; 363 NW2d 641 (1984). Those conditions were "(1) [that] the acts were taken during the course of employment and the employees were acting, or reasonably believed that they were acting, within the scope of their authority, (2) [that] the acts were taken in good faith, and (3) [that] the acts were discretionary-decisional, as opposed to ministerial-operational." *Odom*, 482 Mich at 468.

issue in this case, does not extend immunity to those government actors whose conduct amounts to "gross negligence that is the proximate cause of the injury or damage."[72]

The dissent's approach, under which even inanimate objects could be the proximate cause, fails to give meaning to the 1986 amendment of the GTLA. That is, the dissent's approach would immunize government actors for every harm that is a foreseeable result of their gross negligence.[73] Under the dissent's reasoning, as best we understand it, a government actor whose gross negligence foreseeably causes a fire that burns the plaintiff's house to the ground could avoid liability by blaming the fire, notwithstanding that the resulting harm is precisely that which the actor's conduct foreseeably risked. Likewise, the plaintiff foreseeably injured by the grossly negligent discharge of a government actor's firearm would have no recourse—it is the bullet that is always the more direct cause. Under this approach, government actors do not injure people, the implements they use do. The dissent provides no explanation to the contrary. We believe the dissent's theory fails to give meaning to the 1986 amendment by eliminating the narrow exception to government immunity created by

---

[72] MCL 691.1407(2)(c).

[73] This approach, which is akin to a most-recent-in-time rule, has been widely discredited:

> It is of course obvious that if a defendant sets a fire which burns the plaintiff's house, no court in the world will deny liability upon the ground that the fire, rather than the defendant's act, was the nearest, or next cause of the destruction of the house. . . . There may have been considerable confusion about this in the distant past, but the question is certainly no longer open. [Prosser & Keeton, § 42, pp 276-277.]

MCL 691.1407(2)(c).[74]  If the Legislature had intended governmental officials to be absolutely immune from liability, we cannot make sense of the words they chose to accomplish that result.  The 1986 amendment undoubtedly creates an *exception*, albeit a narrow one, to governmental immunity.  To read it otherwise is to ignore the words of the statute.[75]  "Where the [statutory] language is unambiguous, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written."[76]  Here, the Legislature amended the GTLA to provide a narrow exception to governmental immunity for grossly negligent acts that were "the proximate cause" of a plaintiff's injuries.[77]  "Proximate cause" has for a hundred years in this state, and elsewhere, been a legal term

---

[74] The dissent contends that our argument is a "veiled reliance on the so-called 'absurd results' doctrine."  We rely on nothing of the sort.  We give effect to the plain text of the statute, which produces no absurdity—"proximate cause" as used in the GTLA means what it has meant for a century in the common law of Michigan and elsewhere; one cannot be "the proximate cause" of an injury without being both a factual and legal cause thereof.

[75] We are puzzled by the dissent's criticism of us for relating the statutory history of the GTLA.  That history, the dissent acknowledges, consists only of the unassailable fact that the GTLA was amended to provide a narrow exception to governmental immunity when a government actor's gross negligence was the proximate cause of an injury.  We are not aware of any rule suggesting that it is forbidden to acknowledge that a statute has been amended unless the statute is ambiguous—as the GTLA is not.  Our charge is to give effect to the Legislature's amendments, which we have done by honoring the words they selected—"the proximate cause."

[76] *Pohutski v City of Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002) (quotation marks omitted).

[77] MCL 691.1407(2)(c).

of art; one's actions cannot be *a* or *the* "proximate cause" without being both a factual and a legal cause of the plaintiff's injuries. We give the text its plain meaning.

## VII. CONCLUSION

Proximate cause requires determining whether the defendant's negligence foreseeably caused the plaintiff's injuries. That negligence (or gross negligence in the case of the GTLA) cannot have been a proximate cause of a plaintiff's injury if it is not both a factual and legal cause of the injury. A court should take all possible proximate causes into account when determining whether the defendant was "the proximate cause," i.e., "the one most immediate, efficient, and direct cause of the injury . . . ."[78] In this case, the Court of Appeals erred by instead attempting to discern whether the various but-for causes of plaintiff's injuries were a more direct cause of those injuries than defendant's alleged gross negligence, without first determining whether any of the asserted but-for causes were *proximate* causes. Accordingly, we vacate the Court of Appeals' decision and remand to the Court of Appeals for further proceedings not inconsistent with this opinion.

David F. Viviano
Bridget M. McCormack
Richard H. Bernstein
Joan L. Larsen

---

[78] *Robinson*, 462 Mich at 462.

S T A T E   O F   M I C H I G A N

SUPREME COURT

MICHAEL A. RAY and JACQUELINE M.
RAY as Coconservators for KERSCH RAY,
a Minor,

        Plaintiffs-Appellants,

v                                   No. 152723

ERIC SWAGER,

        Defendant-Appellee,

and

SCOTT ALLEN PLATT, HEATHER
MARIE PLATT, and LIBERTY MUTUAL
INSURANCE COMPANY,

        Defendants.

_____

WILDER, J. (*dissenting*).

    I respectfully dissent.  In my judgment, the Court of Appeals reached the correct outcome by duly applying our germane holdings in *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 (2000), and *Beals v Michigan*, 497 Mich 363; 871 NW2d 5 (2015).[1]

---

[1] Indeed, under the doctrine of stare decisis, the Court of Appeals was *bound* to follow those decisions.  See *Associated Builders & Contractors v Lansing*, 499 Mich 177, 191; 880 NW2d 765 (2016); *Baumgartner v Perry Pub Sch*, 309 Mich App 507, 531 n 37; 872 NW2d 837 (2015).

Because the Court of Appeals committed no error in its application of *Robinson* and *Beals* to the facts of the instant case, I would affirm.

I

*Robinson* is our seminal case interpreting the "employee provision" of the governmental tort liability act (GTLA)[2]—MCL 691.1407(2)—which provides an exception to the GTLA's "broad" grant of tort immunity to governmental actors. *Robinson*, 462 Mich at 455, 458. In pertinent part, MCL 691.1407(2) provides:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service . . . while acting on behalf of a governmental agency if all of the following are met:
>
> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is *the proximate cause* of the injury or damage. [Emphasis added.]

In construing the phrase "the proximate cause" in *Robinson*, 462 Mich at 459, we relied on several well-settled principles of statutory interpretation:

---

[2] MCL 691.1401 *et seq.*

2

Because the Legislature is presumed to understand the meaning of the language it enacts into law, statutory analysis must begin with the wording of the statute itself. Each word of a statute is presumed to be used for a purpose, and, as far as possible, effect must be given to every clause and sentence. The Court may not assume that the Legislature inadvertently made use of one word or phrase instead of another. Where the language of the statute is clear and unambiguous, the Court must follow it.

These rules of statutory construction are especially germane in the cases now before us because Michigan strictly construes statutes imposing liability on the state in derogation of the common-law rule of sovereign immunity. This Court has repeatedly acknowledged that governmental immunity legislation evidences a clear legislative judgment that public and private tortfeasors should be treated differently. [Quotation marks and citations omitted.]

In light of such principles, we held that "[t]he Legislature's use of the definite article 'the' " in the phrase "*the* proximate cause" clearly demonstrated "an intent to focus on one cause." *Id*. at 458-459. Recognizing that our "duty is to give meaning to the Legislature's choice of one word over the other," we decided that the phrase "*the* proximate cause" must not be interpreted as synonymous with "*a* proximate cause." *Id*. at 461. Therefore, we afforded the phrase "the proximate cause" the common-law meaning that it has held in our jurisprudence since 1913:

We are helped by the fact that this Court long ago defined "the proximate cause" as "the immediate efficient, direct cause preceding the injury." *Stoll v Laubengayer*, 174 Mich 701, 706; 140 NW 532 (1913). The Legislature has nowhere abrogated this, and thus we conclude that . . . the Legislature provided tort immunity for employees of governmental agencies unless the employee's conduct amounts to gross negligence that is the one most immediate, efficient, and direct *cause* of the injury or damage, i.e., the proximate cause. [*Id*. at 462 (emphasis added).]

The *Stoll* decision on which we relied in *Robinson* treated the question of proximate "cause" as one necessarily involving the consideration of factual (i.e., but-for)[3] causation. *Stoll*, 174 Mich at 706 ("But for this act of [the decedent] (subsequent to defendant's alleged negligent act, and therefore proximate to the injury) no accident could have occurred.").

In *Beals*, 497 Mich at 365-366, we applied the principles set forth in *Robinson* to a factual scenario in which the plaintiff, autistic 19-year-old William Beals, drowned in an indoor swimming pool while in the presence of the defendant lifeguard, William Harman, who was a governmental employee. "Applying this Court's rationale in *Robinson*," we held that

> Harman's failure to intervene in Beals's drowning cannot reasonably be found to be "the one most immediate, efficient, and direct cause" of Beals's death. While it is unknown what specifically caused Beals to remain submerged under the water, the record indicates that Beals voluntarily entered the pool and voluntarily dove under the surface of the shallow end into the deep end without reemerging. Although plaintiff alleges that Harman's inattentiveness prevented him from attempting a timely rescue of Beals, in our view, it is readily apparent that the far more "immediate, efficient, and direct cause" of Beals's death was that which caused him to remain submerged in the deep end of the pool without resurfacing.
>
> . . . That we lack the reason for Beals's prolonged submersion in the water does not make that unidentified reason any less the "most immediate, efficient, and direct" cause of his death. Consequently, while Harman's failure to intervene may be counted among the myriad reasons that Beals did not survive this occurrence, it certainly was not "the proximate cause"

---

[3] See generally *Craig v Oakwood Hosp*, 471 Mich 67, 86-87; 684 NW2d 296 (2004) ("The cause in fact element generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred.") (quotation marks and citation omitted).

of his death for purposes of MCL 691.1407(2)(c).  [*Beals*, 497 Mich at 373-374.]

In other words, even though Harman's conduct would undoubtedly have been recognized as "a" potential *legal* cause of the drowning under our ordinary negligence jurisprudence, in *Beals* we compared a number of potential factual (i.e., but-for) causes of Beals's drowning and determined that the behavior of the governmental employee was not "the" proximate cause.

It was unnecessary in *Beals* to analyze foreseeability or legal causation to conclude that the governmental actor was not *the* proximate cause of Beals's drowning—we were able to determine that Harman's conduct was not the one most immediate, efficient, and direct cause of Beals's death simply by comparing the but-for causes.  That is because it is well settled in our negligence jurisprudence that the phrase "proximate cause" is "a legal term of art that incorporates *both* cause in fact and legal (or 'proximate') cause."  *Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004) (emphasis added).  See also *Weymers v Khera*, 454 Mich 639, 647; 563 NW2d 647 (1997) ("To establish proximate cause, the plaintiff must prove the existence of both cause in fact and legal cause.").[4]  Indeed, while the term "proximate cause" has also been

---

[4] Accord *Black v Shafer*, 499 Mich 950, 951 (2016); *White v Hutzel Women's Hosp*, 498 Mich 881 (2015); *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 496; 791 NW2d 853 (2010) (opinion by HATHAWAY, J.); *id*. at 508 (CAVANAGH, J., concurring); *Skinner v Square D Co*, 445 Mich 153, 162-163; 516 NW2d 475 (1994), overruled in part on other grounds by *Smith v Globe Life Ins Co*, 460 Mich 446, 455 n 2 (1999); *Moning v Alfono*, 400 Mich 425, 439-440, 440 n 13; 254 NW2d 759 (1977); *Glinski v Szylling*, 358 Mich 182, 196-197; 99 NW2d 637 (1959) (opinion by SMITH, J.); *Stoll*, 174 Mich at 706; *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 157; 871 NW2d 530 (2015); *Manzo v Petrella*, 261 Mich App 705, 712; 683 NW2d 699 (2004); *Adas v Ames Color-File*, 160 Mich App 297, 300-301; 407 NW2d 640 (1987).

used as a synonym for "legal cause," see, e.g., *Haliw v Sterling Heights*, 464 Mich 297, 310; 627 NW2d 581 (2001) ("[L]egal cause or 'proximate cause'[5] normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences") (quotation marks and citation omitted), well before 1986 we recognized that the "sine qua non"[6] of proximate cause is "cause in fact." See *Glinski v Szylling*, 358 Mich 182, 196-197; 99 NW2d 637 (1959) (plurality opinion by SMITH, J.).[7] See also *Moning v Alfono*, 400 Mich 425, 439-440, 440 n 13; 254 NW2d

---

[5] Were "legal cause" and "proximate cause" truly synonymous, there would be no need for this Court to refer to *both* concepts as a way of clarifying when it is referring to legal causation. As the Restatement of the Law Third, Torts recognizes, like "proximate cause," the phrase "legal cause" can be a misnomer, "contribut[ing] to the misleading impression that limitations on liability somehow are about factual cause." 1 Restatement Torts 3d: Liability for Physical & Emotional Harm, Special Note on Proximate Cause, ch 6, pp 492-493. See also Dobbs, Hayden & Bublick, Torts, § 200, p 687 ("One major source of confusion about 'proximate cause'—and thus another aspect of the pesky terminology problem—lies in the fact that many courts define the term in a way that gives it two distinct meanings.").

[6] "Sine qua non" means "[a]n indispensable condition or thing; something on which something else *necessarily* depends." *Black's Law Dictionary* (10th ed) (emphasis added).

[7] The four-justice plurality in *Glinski*, 358 Mich at 196-197 (opinion by SMITH, J.), stated that

> [t]his expression, "proximate" cause, has bedeviled the law of torts for years. So much has been written concerning its "true" meaning that it would be a disservice to the profession, and presumptuous, to slay the dragon once more. Suffice to say it has no "true" meaning. It may be made to represent, at will, a number of entirely disparate elements in a negligence case, ranging from cause in fact to apportionment of damages. "No other formula," writes Dean Green, "so nearly does the work of Aladdin's lamp." It would advance the cause of justice if a term so chameleonlike were to be abandoned. This is beyond our power. It is too deeply imbedded in the

6

759 (1977) (explaining that "[p]roximate cause encompasses a number of distinct problems," one of which is "[t]he problem of causation in fact"), quoting Prosser, Torts (4th ed), § 42, p 244. "As a matter of logic, a court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the . . . legal cause of those injuries." *Craig*, 471 Mich at 87. See also 4 Harper, James & Gray, Torts (2d ed), § 20.2, pp 89-91 ("Through all the diverse theories of proximate cause runs a common thread; almost all agree that defendant's wrongful conduct must be a cause in fact of plaintiff's injury before there is liability. This notion is not a metaphysical one but an ordinary, matter-of-fact inquiry into the existence or nonexistence of a causal relation as lay people would view it."). In other words, but-for causation is an indispensable part of the "proximate cause" inquiry. If something is not a factual cause of an injury, it is not a "cause" of the injury at all, and ergo it cannot, as a matter of logic, be a *legal* cause. To hold otherwise is to accept the paradoxical outcome that an actor who did *not* cause an injury may nevertheless be deemed its "proximate cause."[8]

---

cases and the literature for surgery so drastic. But we should insist that, whenever it is employed, the meaning sought to be ascribed to it be identified. Here it is being used as a synonym for the sine qua non, cause in fact. [Citation omitted.]

[8] Because of the confusion wrought by the duality of meaning we have varyingly ascribed in our negligence jurisprudence to the phrase "proximate cause," it would arguably be a best practice to discontinue the use of that phrase entirely. See generally Restatement, ch 6, Special Note on Proximate Cause. But because the question before us is one of statutory interpretation—not negligence law—it would be inappropriate to rule on that issue today because any such ruling would necessarily be obiter dictum.

7

The test announced by *Robinson* and reaffirmed by *Beals* fits within this analytical framework and satisfies this Court's duty to narrowly construe the exception to immunity provided by MCL 691.1407(2)(c).[9] One cannot determine whether a governmental actor's conduct was "the one most immediate, efficient, and direct *cause*" of an injury without considering factual causation. In other words, to determine which cause—among more than one—was "most immediate, efficient, and direct," one must consider the panoply of but-for causes and weigh their immediacy, efficiency, and directness. Legal causation, on the other hand, only becomes a relevant consideration in GTLA litigation when "the one most immediate, efficient, and direct cause" of the injury is a cause to which the law will not assign liability. See *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994) ("A plaintiff must adequately establish cause in fact in order for legal cause . . . to become a relevant issue.").[10] Put differently, legal cause acts only as a *limitation* to the scope of liability under the GTLA, not a means of *assigning* liability.[11]

---

[9] To the extent that there is any ambiguity whether the Legislature intended "proximate cause" to denote legal cause only or to denote both factual cause and legal cause, the more inclusive definition (incorporating both) must be used because doing so leads to a narrower exception. *Beals*, 497 Mich at 370 (noting that the GTLA's exceptions to the "general rule" of governmental immunity "must be narrowly construed"). See also *Mack v Detroit*, 467 Mich 186, 196 n 10; 649 NW2d 47 (2002) ("[A]s this Court has consistently held since its seminal case" on the subject, "exceptions to governmental immunity are narrowly construed.").

[10] *Skinner* was subsequently overruled in part on other grounds by *Smith*, 460 Mich at 455 n 2.

[11] Indeed, the majority acknowledges that "the term 'proximate cause' is applied by courts to those considerations which *limit* liability. . . ." (Quotation marks and citation omitted; emphasis added.)

8

See *Moning*, 400 Mich at 439 ("Proximate cause encompasses a number of distinct problems including the *limits of liability for foreseeable consequences*.") (emphasis added).

Applying the above principles to the documentary evidence and well-pleaded allegations in this case,[12] it is evident that defendant Eric Swager's conduct was not "the proximate cause" of plaintiff Kersch Ray's injuries for purposes of MCL 691.1407(2). Even assuming, for the sake of argument, that Swager was grossly negligent in directing the team to cross the road,[13] and further assuming that Ray in fact heard Swager and entered the roadway on Swager's directive, no reasonable juror could conclude that Swager's conduct was the one most immediate, efficient, and direct cause of Ray's injuries. At a minimum, the 13-year-old Ray both could and should have verified that it was safe to enter the roadway before he voluntarily did so.[14] See, e.g., *Ackerman v Advance Petroleum Transp, Inc*, 304 Mich 96, 106, 107; 7 NW2d 235 (1942) (ruling that

---

[12] As this Court recognized in *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994), motions for summary disposition based on governmental immunity are governed by MCR 2.116(C)(7). "All well-pleaded allegations are viewed in the light most favorable to the nonmoving party unless documentary evidence is provided that contradicts them." *Haksluoto v Mt Clemens Regional Med Ctr*, ___ Mich ___, ___; ___ NW2d ___ (2017) (Docket No. 153723); slip op at 3-4.

[13] This is a dubious assumption. See note 35 of this opinion.

[14] This is not to discount the tragic and life-altering consequences that Ray and his family have endured because of the accident at issue in this case. However, it is the Legislature's prerogative—not this Court's—to decide if and when governmental actors are immune from tort liability. *Lash v Traverse City*, 479 Mich 180, 194; 735 NW2d 628 (2007).

9

an eight-year-old child had the mental capacity to understand the dangers of crossing the street); *Pratt v Berry*, 37 Mich App 234, 238; 194 NW2d 465 (1971) ("[A]n ordinarily prudent seven-year-old child must look while crossing the street."). See also *Stoll*, 174 Mich at 706 (holding that a five-year-old child's act of sledding into the street was the proximate cause of her death because but for that act she would not have been injured).[15]

As the Court of Appeals aptly reasoned:

> The contention that Ray essentially ran into the road in blind obedience to a verbal instruction from Swager simply does not alter the undeniable reality that Ray entered the road under his own power and he was then struck by a moving vehicle driven by someone other than Swager. Had Ray himself verified that it was safe to enter the roadway, as did many of his fellow teammates, the accident would not have occurred. Likewise, had Platt not been driving on the roadway that morning, or had he otherwise avoided Ray, the accident would not have occurred. In these circumstances, there were obviously more immediate, efficient, and direct causes of Ray's injuries than Swager's oral remarks. [*Ray v Swager*, unpublished per curiam opinion of the Court of Appeals, issued October 15, 2015 (Docket No. 322766), pp 3-4.]

Put differently, it was either Ray's conduct or that of the driver—but not Swager's conduct—that was the one most immediate, efficient, and direct cause of Ray's injuries. But for Ray's conduct (his act of running into the roadway without assessing traffic despite a do-not-cross signal) and that of the driver (failing to yield to a pedestrian or failing to reasonably survey the roadway), Ray would not have sustained his injuries. Because Swager's alleged gross negligence was not "the" proximate cause of Ray's

---

[15] Although minors are held to a subjective standard of care, *Clemens v City of Sault Ste Marie*, 289 Mich 254, 256; 286 NW 232 (1939), plaintiffs have neither alleged nor offered proof of any subjective characteristic that left Ray less able to assess traffic than an ordinary high school freshman.

injuries, Swager was immune from suit under the GTLA and thus entitled to summary disposition.

## II

Largely characterizing proximate cause as legal cause *only*, the majority incorrectly claims that "[o]ur first characterization of 'proximate cause' as meaning both 'proximate cause'[16] and 'but-for cause' " did not occur until our decision in *Skinner*, 445 Mich at 162-163. This ignores several earlier precedents, including our 1977 decision in *Moning*, 400 Mich at 439, 440 n 13 (explaining that "[p]roximate cause encompasses a number of distinct problems," one of which is "[t]he problem of causation in fact"), quoting Prosser, Torts (4th ed), § 42, p 244, the 1959 plurality decision in *Glinski*, 358 Mich at 196-197 (opinion by SMITH, J.) (explaining that cause in fact is the "*sine qua non*" of proximate of cause),[17] and our 1913 decision in *Stoll*, 174 Mich at 706 ("But for this act of [the decedent] (subsequent to defendant's alleged negligent act, and therefore proximate to the injury) no accident could have occurred."). The majority asserts that over time this Court has improperly conflated factual and legal causation, but the very cases that the majority cites in support, including *Craig*, *Moning*, *Skinner*, and *Charles*

---

[16] I presume here that the majority means *legal* cause.

[17] This Court has, on numerous occasions, cited the *Glinski* plurality as authoritative. See, e.g., *Weymers*, 454 Mich at 648 n 12; *Brisboy v Fibreboard Corp*, 429 Mich 540, 547; 418 NW2d 650 (1988); *Zeni v Anderson*, 397 Mich 117, 141; 243 NW2d 270 (1976). In any event, binding or not, *Glinski* is certainly instructive about whether the 1986 Legislature would have considered but-for causation to be a proper part of the proximate cause analysis.

*Reinhart Co v Winiemko*,[18] demonstrate that this Court has on numerous occasions recognized that a proper proximate cause analysis cannot take place without consideration of the sine qua non, cause in fact. The Legislature is presumed to have been aware of such decisions when it amended the GTLA to afford a narrow exception to governmental immunity,[19] and the majority cites no authority for the proposition that factual causation was *not* considered to be part of the proximate cause analysis under our common law in 1986. It is in this temporal context that we must consider the proper construction of the phrase "the proximate cause."

Because it is the Legislature's intent that controls, we are charged under MCL 8.3a with the duty of according the phrase "the proximate cause" the "peculiar and appropriate" legal meaning that it had at the time MCL 691.1407(2)(c) was enacted, not the meaning that we might wish to ascribe to that phrase today. See *Sam v Balardo*, 411 Mich 405, 425; 308 NW2d 142 (1981). Consequently, this Court's power to redefine over the years the phrase "proximate cause" for purposes of the common law[20] does not

---

[18] *Charles Reinhart Co v Winiemko*, 444 Mich 579, 586; 513 NW2d 773 (1994) (plurality opinion by RILEY, J.) ("As in any tort action, to prove proximate cause a plaintiff in a legal malpractice action must establish that the defendant's action was a cause in fact of the claimed injury. Hence, a plaintiff 'must show that *but for* the attorney's alleged malpractice, he would have been successful in the underlying suit.' ") (citation omitted).

[19] *In re Bradley Estate*, 494 Mich 367, 384-385; 835 NW2d 545 (2013); *In re Medina*, 317 Mich App 219, 227-228; 894 NW2d 653 (2016).

[20] "[I]t is axiomatic that our courts have the constitutional authority to change the common law in the proper case." *North Ottawa Community Hosp v Kieft*, 457 Mich 394, 403 n 9; 578 NW2d 267 (1998). "However, this Court has also explained that alteration of the common law should be approached cautiously with the fullest consideration of public policy and should not occur through sudden departure from longstanding legal

12

grant it the constitutional authority to retroactively alter the meaning of that phrase when interpreting MCL 691.1407(2)(c).

Nevertheless, that is precisely what the majority now does. Long before MCL 691.1407(2)(c) was enacted in 1986—and many times since—our common law has recognized that factual causation is, like legal causation, an integral part of "proximate cause." See, e.g., *Craig*, 471 Mich at 86 (" 'Proximate cause' is a legal term of art that incorporates both cause in fact and legal (or 'proximate') cause."); *Moning*, 400 Mich at 439, 440 n 13; *Glinski*, 358 Mich at 196-197 (opinion by SMITH, J.); *Stoll*, 174 Mich at 706 ("*But for* this act of [the decedent] (subsequent to defendant's alleged negligent act, and therefore proximate to the injury) no accident could have occurred.") (emphasis added).[21] The majority, however, conflates these two prongs of proximate causation, treating "legal cause" as if it has something to do with causation, which it does not. See Dobbs, § 185, p 622 ("Scope of liability, formerly termed proximate cause, is not about causation at all but about the significance of the defendant's conduct or the appropriate

---

rules. . . . [W]hen it comes to alteration of the common law, the traditional rule must prevail absent compelling reasons for change." *Price v High Pointe Oil Co, Inc*, 493 Mich 238, 259-260; 828 NW2d 660 (2013).

[21] Accord *Black*, 499 Mich at 951; *White*, 498 Mich at 881; *O'Neal*, 487 Mich at 496 (opinion by HATHAWAY, J.); *id*. at 508 (CAVANAGH, J., concurring); *Skinner*, 445 Mich at 162-163; *Auto-Owners*, 310 Mich App at 157; *Manzo*, 261 Mich App at 712; *Adas*, 160 Mich App at 300-301. Similarly, a careful reading of *Tozer v Mich Central R Co*, 195 Mich 662, 666; 162 NW 280 (1917), demonstrates that the *Tozer* Court, like *Stoll* before it, considered but-for causation to be a proper part of its proximate cause analysis. See *id*. at 669 ("[I]f the cot had not been placed near the trunks, piled one upon the other, one or more of them would not have fallen upon Mrs. Tozer, so that we think it clear that the proximity of the cot to the falling trunks was the proximate cause of the injury. . . .").

13

scope of liability in light of moral and policy judgments about the very particular facts of the case.").  The majority's conflation in this regard leads it to construe the phrase "*the proximate cause*"—i.e., the one most immediate, efficient, and direct *cause*—as if it is centered mainly on legal causation (i.e., scope of liability), with cause in fact acting only as a threshold consideration.  From a purely logical standpoint, however, it is not possible to use the foreseeability-based limitations on liability provided by the concept of legal cause to affirmatively decide which cause, among several, was most immediate, efficient, and direct.  Only by comparing factual causes can one discern their relative immediacy, efficiency, and directness.[22]

Stated another way, while accusing the dissent of "distort[ing] the meaning of 'the proximate cause' by severing it from the concept of *legal* causation,"[23] the majority seeks to divorce that same phrase largely from the concept of *factual* causation.  But the majority does not explain how courts might determine what constitutes "the one most immediate, efficient, and direct cause"[24] of an injury *without* weighing factual causes.  Such a test—asking judges to determine what caused an injury *without considering its*

---

[22] Contrary to the majority's allegations otherwise, this approach does not "render legal cause irrelevant."  Rather, legal cause becomes relevant *after* the panoply of but-for causes has been considered.  If the one most immediate, efficient, and direct cause of an injury was the grossly negligent conduct of a governmental actor, a court should then assess whether such conduct was also a legal cause of the injury (i.e., if the injury was a foreseeable consequence of the governmental actor's conduct).  If not, the actor is immune under MCL 691.1407(2)(c).

[23] Emphasis added.

[24] *Robinson*, 462 Mich at 462.

*potential causes*—is akin to asking jurors to determine damages without any consideration of harm. The majority asks this state's jurists to take the "cause" out of causation. Yet, the majority provides no roadmap regarding how this state's jurists might go about accomplishing that feat.[25]

Additionally, after holding that lower courts are *not* permitted to weigh factual causes when determining "the proximate cause" under MCL 691.1407(2)(c), the majority goes on to state that a proper analysis *does* "require considering defendant's actions alongside any other potential proximate causes to determine whether defendant's actions were, or could have been, 'the one most immediate, efficient, and direct cause' of the injuries." (Citations omitted). This statement makes no logical sense, however, unless factual causation *is* considered to be part of the "proximate cause" analysis. By "proximate cause," the majority actually means "legal cause." And as already explained, "legal cause" is a misnomer insomuch as it has nothing at all to do with *causation*; instead, it "involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Skinner*, 445 Mich

---

[25] This will almost inevitably result in jurisprudential confusion and upset in lower courts. Moreover, the majority's failure to provide guidance about the application of its new interpretation of the phrase "the proximate cause" creates uncertainty for plaintiffs, who, when suing governmental actors, have the burden of pleading their claims in avoidance of governmental immunity. See *Mack*, 467 Mich at 201 ("[I]t is the responsibility of the party seeking to impose liability on a governmental agency to demonstrate that its case falls within one of the exceptions."). Accord *Hannay v Dep't of Transp*, 497 Mich 45, 58; 860 NW2d 67 (2014). Until the majority provides some practical guidance on how one determines proximate causation without weighing factual causes, it would seem nigh on impossible for a plaintiff to satisfy this pleading requirement.

at 163; see also Dobbs, § 185, p 622 (explaining that legal cause[26] "is not about causation at all . . . ."). It is impossible to compare the responsibility of different actors on the basis of foreseeability without comparing their conduct—i.e., the potential causes in *fact*. Put differently, one cannot determine legal cause without comparing factual causes. How "weighing" such causes differs from "considering" them "alongside" one another, the majority does not explain.[27]

---

[26] Dobbs refers to "legal cause" as "scope of liability" to ease confusion in the use of the term "causation." Dobbs, § 185, p 621.

[27] Notwithstanding this failure to fully explain the legal rule it announces today, the majority criticizes this opinion for failing to provide any "explanation" regarding (1) whether "a government actor whose gross negligence foreseeably causes a fire that burns the plaintiff's house to the ground could avoid liability by blaming the fire" and (2) whether a "plaintiff foreseeably injured by the grossly negligent discharge of a government actor's firearm would have [any] recourse . . . ." The majority's hypotheticals are so thinly fleshed out from a factual standpoint that to address them would be to box with shadows. It suffices to recognize—as *Beals* did—that "a chain of events might constitute the proximate cause of an injury or death in a different factual scenario." *Beals*, 497 Mich at 377 n 31. Accordingly, the mere presence of other but-for causes does not necessarily immunize a government actor from liability. Instead, a trial court must assess whether the government actor's gross negligence or some other but-for cause was the *most* immediate, efficient, and direct cause.

In addition, the majority asserts, without citation of authority, that inanimate objects or forces cannot be "the proximate cause" of an injury. This ignores the well-established concept "that for the overwhelming number of common law cases, ordinary rules of negligence and scope of liability (proximate cause)—including scope of risk rules—apply to intervening natural forces . . . ." Dobbs, § 210, p 731. There is, in fact, support for that proposition in our Model Civil Jury Instructions, specifically in M Civ JI 15.06 ("Intervening Outside Force (Other Than Person)"), which instructs, in pertinent part that "if you decide that the only proximate cause of the occurrence was [ *description of force* ], then your verdict should be for the [ defendant / defendants ]." (Brackets in original.) See also *McLane, Swift & Co v Botsford Elevator Co*, 136 Mich 664, 665; 99 NW 875 (1904) ("Defendant's neglect to clip and ship the oats had no direct relation to their destruction. It simply resulted in leaving them where they were burned by a fire for

16

Nor does the majority explain how its expansive interpretation of MCL 691.1407(2)(c) comports with our well-established duty to construe exceptions to governmental immunity narrowly. See *Yono v Dep't of Transp*, 499 Mich 636, 641; 885 NW2d 445 (2016) ("[W]e are to narrowly construe exceptions to governmental immunity. . . ."); *Beals*, 497 Mich at 370 (noting that the GTLA's exceptions to the "general rule" of governmental immunity "must be narrowly construed"); *Wilson v Alpena Co Rd Comm*, 474 Mich 161, 166; 713 NW2d 717 (2006) ("Statutory exceptions to the immunity of governmental agencies are to be narrowly construed."); *Mack v Detroit*, 467 Mich 186, 196 n 10; 649 NW2d 47 (2002) ("[A]s this Court has consistently held since its seminal case" on the subject, "exceptions to governmental immunity are narrowly construed."). In concert, *Craig*, *Skinner*, *Moning*, *Glinski,* and *Stoll* clearly demonstrate that before 1986, during 1986, and after 1986 factual causation was a well-established element of "proximate cause" under our common law.[28] Thus, because the Legislature is presumed to be aware of judicial decisions interpreting the common law and to legislate in accordance with them,[29] it must be presumed that when the Legislature

which defendant was not responsible. Defendant's neglect was therefore, at most, the remote cause, while the accidental fire was the proximate cause of plaintiff's loss.").

[28] Not to mention *Adas*, 160 Mich App at 300-301, which was decided just a year after MCL 691.1407(2)(c) was enacted and in which the Court of Appeals explained, "It is important to keep in mind when determining whether proximate causation exists that such causation is a legal relationship involving two separate and distinct concepts: cause in fact and legal cause." While *Adas* is not binding on this Court, it is instructive about what the 1986 Legislature thought a proper "proximate cause" analysis entailed. See *Medina*, 317 Mich App at 227-228 (noting that the Legislature is presumed to be aware of decisions of the Court of Appeals).

[29] *Bradley Estate*, 494 Mich at 384; *Medina*, 317 Mich App at 227-228.

17

used the phrase "the proximate cause" in MCL 691.1407(2)(c), it intended that phrase to include both factual causation and legal causation as described in *Stoll*, 174 Mich at 706.[30] Nevertheless, the majority treats "proximate cause" as if it merely denotes "legal cause," thereby construing MCL 691.1407(2)(c) as *broadly* as possible. By so ruling, the majority massively expands the exception to governmental immunity provided by MCL 691.1407(2)(c).

Indeed, the majority tacitly acknowledges this impact of its construction, stating that the current approach, which permits factual causation to be considered, "fails to give meaning to the 1986 amendment of the GTLA," leaving little room for exceptions to governmental immunity. That is, however, precisely what a *narrowly* drawn exception does—it leaves little room for exceptions to the general rule.

Moreover, contrary to the majority's assertions, the statutory history of the GTLA does not compel the result reached by the majority. The majority aptly observes that legislative history and statutory history are distinct concepts. The cardinal rule of statutory interpretation, however, is that "[w]here the [statutory] language is unambiguous, 'we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written.' " *Pohutski v City of Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002), quoting *DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300

---

[30] As already explained, to the extent that there is any ambiguity whether the Legislature intended "proximate cause" to denote legal cause only or to denote both factual cause and legal cause, the definition incorporating both must be used. See note 9 of this opinion.

(2000). One need not delve into statutory history, as the majority does, to discern that MCL 691.1407(2)(c) was intended to create an exception to governmental immunity. See *Conroy v Aniskoff*, 507 US 511, 519; 113 S Ct 1562; 123 L Ed 2d 229 (1993) (Scalia, J., concurring). As *Beals* recognized, the plain language of the GTLA proves the point quite nicely standing alone. See *Beals*, 497 Mich at 365 ("While governmental agencies and their employees are generally immune from tort liability under the [GTLA], MCL 691.1407(2)(c) provides an exception to this general rule . . . ."). Because nothing in the statutory history of the GTLA contravenes the plain meaning of the statutory language, the majority's discussion of statutory history, while perhaps academically interesting, is ultimately superfluous.

Nor does the obvious legislative intent to create an exception to governmental immunity obviate our duty to construe that exception *narrowly*. The majority disregards the presumption that the Legislature was aware, when it added MCL 691.1407(2)(c) to the GTLA, of our earlier decisions recognizing that exceptions to governmental immunity are narrowly construed.[31] Had the Legislature wished to provide a *broad* exception, it would have employed language manifesting that intent. It did not.

In the alternative, the majority contends that a narrow interpretation of MCL 691.1407(2)(c) is untenable because it "would immunize government actors for every harm that is a foreseeable result of their gross negligence." This argument is a veiled

---

[31] See, e.g., *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 601; 363 NW2d 641 (1984), citing *Manion v State Hwy Comm'r*, 303 Mich 1, 19; 5 NW2d 527 (1942).

19

reliance on the so-called "absurd results" doctrine. See generally *Johnson v Recca*, 492 Mich 169; 821 NW2d 520 (2012). "To properly invoke the 'absurd results' doctrine," however, it must be shown "that it is *quite impossible* that the Legislature could have intended" the result in question. *Id*. at 193 (emphasis added). A proper analysis in this vein cannot rest merely on what seems to be the "obvious" legislative intent but should instead delve into substance and, in a given case, "might require a serious-minded analysis of the Legislature's policy objectives in enacting the statutes, the political realities and disagreements within the Legislature that adopted the statutes, the necessity for compromise and negotiation leading to enactment of the statutes, and the public impetus behind the statutes . . . ." *Id*. at 194. Because "this Court is not empowered to act as the people's lawmaker-in-chief," "it must be assumed that the language and organization of the statute better embody the 'obvious intent' of the Legislature than does some broad characterization surmised or divined by judges." *Id*. at 196-197. Here, the majority has failed to demonstrate that it is "quite impossible" that the Legislature intended the exception to governmental immunity set forth by MCL 691.1407(2)(c) to be a narrow one.

Furthermore, although it engages in little stare decisis analysis,[32] the majority's holding is patently inconsistent with *Robinson* and *Beals*. A mere two years ago, the *Beals* majority of six—including two members of the instant majority—did precisely what the instant majority assigns as error in this case, comparing a number of factual

---

[32] A stare decisis analysis is applied solely to *Dean v Childs*, 474 Mich 914 (2005), which the majority imprudently overrules.

20

causes of the drowning and determining that the behavior of the governmental employee was not the one most immediate, efficient, and direct cause. *Beals*, 497 Mich at 373-374. Nor is *Beals* an outlier in that respect. The dissenting Court of Appeals opinion on which we relied in *Dean v Childs*, 474 Mich 914 (2005), employed the same analytical framework. See *Dean v Childs*, 262 Mich App 48; 684 NW2d 894 (GRIFFIN, J., concurring in part and dissenting in part.) Notably, the *Beals* majority cited *Dean* favorably, remarking that *Dean* and *Beals* were "analogous." *Beals*, 497 Mich at 375.

Nevertheless, the instant majority overrules *Dean* while merely criticizing our conspicuously similar decisions in *Robinson* and *Beals* and disavowing *Beals*'s reliance on *Dean*. "[W]e should be consistent rather than manipulative in" our application of stare decisis. See *Lawrence v Texas*, 539 US 558, 587; 123 S Ct 2472; 156 L Ed 2d 508 (2003) (Scalia, J., dissenting). To maintain such consistency, it is vital that this Court openly recognizes when it is issuing a holding that is inconsistent with settled precedent, even if only in part. It is poor practice for "this Court to simply ignore precedents with which it disagrees." *Beasley v Michigan*, 483 Mich 1025, 1029 (2009) (CORRIGAN, J., dissenting). Doing so permits conflicting lines of caselaw to develop, which yields jurisprudential uncertainty and variations in outcome that turn solely on which holding— among our several inconsistent holdings—a lower court chooses to follow. Ultimately, this undermines the rule of law.

As this Court unanimously recognized earlier this term, "Generally, in order to 'avoid an arbitrary discretion in the courts, it is indispensable that [courts] should be bound down by strict rules and precedents which serve to define and point out their duty in every particular case that comes before them[.]' " *Coldwater v Consumers Energy Co*,

21

___ Mich ___, ___; 895 NW2d 154, 161 (2017), quoting The Federalist No. 78 (Hamilton) (Rossiter ed, 1961), p 471 (second and third alterations in original). " 'Liberty finds no refuge in a jurisprudence of doubt.' " *Lawrence*, 539 US at 586 (Scalia, J., dissenting), quoting *Planned Parenthood of Southeastern Pa v Casey*, 505 US 833, 844; 112 S Ct 2791; 120 L Ed 2d 674 (1992). Therefore, "principles of law deliberately examined and decided by a court of competent jurisdiction should not be lightly departed," *Coldwater*, ___ Mich at ___; 895 NW2d at 161 (quotation marks and citation omitted).

In the instant case, if the majority disagrees with the holdings in *Robinson* and *Beals* (as its criticism of those decisions seemingly indicates), it should perform a stare decisis analysis and conclusively decide whether to overrule them. As former Chief Justice CORRIGAN once noted in a different context,

> If it intends to alter legal principles embedded in this Court's decisions, then the . . . majority should explain its reasons clearly and intelligibly. Instead, the . . . majority overrules by indirection, or at least leaves the impression that it is doing so, thereby sowing the seeds of confusion and making it difficult for the citizens of this state to comprehend precisely what our caselaw requires. [*Beasley*, 483 Mich at 1030 (CORRIGAN, J., dissenting).]

Here, because the majority avoids the stare decisis question altogether, treating its instant holding and the holding in *Beals* as if they are consistent,[33] two lines of cases will

---

[33] The majority mischaracterizes *Beals*'s holding in an effort to reconcile *Beals* with the majority's holding in this case. *Beals* never held that the lifeguard's conduct was not *a* cause in fact of the plaintiff's death, likely because an expert testified that Beals's drowning " 'could have been and should have been easily prevented.' " *Beals*, 497 Mich at 347 n 22. We explicitly recognized in *Beals* that "[b]ut for the applicable immunity statute, a question of fact m[ight have] remain[ed] as to defendant's liability for the

almost inevitably arise in lower courts, one following the *Beals* analysis and another attempting to follow, to the extent that it might be possible to do so, the analysis set forth by the majority today.[34] Then again, given the inherent unworkability of the purported "test" set forth by the majority, in the future lower courts may simply avoid the proximate cause issue altogether, instead focusing on the "gross negligence" requirement of MCL 691.1407(2)(c).[35]

---

deceased's death." *Id*. at 365-366. No concurrence was issued asserting that the plaintiff failed to establish "cause in fact," and the lone dissent did not once mention factual causation. If, as the majority implies, immunity had nothing to do with our decision in *Beals* (i.e., the defendant in *Beals* was not liable under ordinary negligence standards because he was not a "cause in fact" at all), then there would be no impediment to extending that holding to a private entity, such that a negligent or grossly negligent lifeguard can *never* be liable in negligence for a drowning death. But that is not the law of this state. See *Rickwalt v Richfield Lakes Corp*, 246 Mich App 450; 633 NW2d 418 (2001). The *Beals* lifeguard's entitlement to summary disposition was entirely dependent on his status as a governmental employee. Because he was a governmental employee and his conduct was not "the proximate cause" of the drowning under the GTLA, he was entitled to immunity. To suggest otherwise is to engage in revisionist history.

[34] Because the majority does not overrule *Beals* but only partially disavows it, it is entirely proper to acknowledge here that *Beals* retains precedential value. Doing so is not, as the majority contends, a "thinly veiled invitation to lower courts to ignore" today's majority opinion, an ironic twist of phrase when the majority chooses to partially disavow *Beals* in semantic avoidance of stare decisis—disavowing rather than overruling—while repeatedly citing *Robinson*, the keystone precedent in this state's stare decisis jurisprudence. Stare decisis should apply to the disavowal of this Court's previous decisions no differently than it does when they are overruled. See *Thomas v Washington Gas Light Co*, 448 US 261, 272; 100 S Ct 2647; 65 L Ed 2d 757 (1980) (plurality opinion by Stephens, J.) ("The doctrine of *stare decisis* imposes a severe burden on the litigant who asks us to disavow one of our precedents.").

[35] On that basis, too, I believe that the Court of Appeals reached the correct outcome in this case. Given the other students who successfully crossed the road at Swager's instruction, there does not appear to be a genuine issue of material fact that Swager's alleged conduct in this case was "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a).

Finally, in response to the majority's assertion that this opinion is "unsupported by the plain language of the statute or our caselaw," I simply note three things. First, it is this opinion that relies on the language of MCL 691.1407(2)(c) to support its interpretation of the GTLA, while the majority is compelled to resort to an analysis of statutory history. See pages 18-19 of this opinion. Second, I would construe MCL 691.1407(2)(c) by following *Robinson*, *Dean*, and *Beals*. Third, in stark contrast to the majority opinion, this opinion is not forced to overrule, disavow, or reconcile prior pronouncements from this Court in order to explain its result or avoid tension with existing precedent.

## III

For all of those reasons, I dissent. Because the Court of Appeals reached the correct outcome for the correct reasons by following *Robinson* and *Beals*, I would affirm.

Kurtis T. Wilder
Stephen J. Markman
Brian K. Zahra

24